Filed 9/3/21  P. v. Barajas CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALAN ANDRE BARAJAS,<br><br>Defendant and Appellant. | F081406<br><br>(Super. Ct. No. BF179605A)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Franson, Acting P.J., Smith, J. and Meehan, J.

Defendant Alan Andre Barajas stands convicted of making a criminal threat and misdemeanor trespass. On appeal, he contends (1) the evidence was insufficient to support his conviction for trespass, (2) the trial court erred in failing to give a unanimity instruction as to the trespass charge, (3) the prosecutor engaged in misconduct by referring to facts not in evidence, requiring reversal of his criminal threats conviction, and (4) his term of probation must be modified to two years pursuant to Penal Code section 1203.1, subdivision (a),[1] as amended by Assembly Bill No. 1950 (2019−2020 Reg. Sess.) (Assembly Bill 1950). The People concede that defendant's trespass conviction should be reversed, disagree on defendant's claim of prosecutorial misconduct, and agree that defendant is entitled to relief pursuant to Assembly Bill 1950. We reverse the trespass conviction and modify defendant's term of probation to two years. As modified, we affirm.

## PROCEDURAL SUMMARY

On June 8, 2020,[2] the Kern County District Attorney filed an amended information charging defendant with making a criminal threat (§ 422; count 1) and misdemeanor trespass (§ 602, subd. (m); count 2).[3]

On June 10, a jury trial commenced. At the close of the People's case, defendant moved to dismiss counts 1 and 2 for insufficient evidence. The trial court denied defendant's motion as to both counts. On June 12, the jury found defendant guilty on both counts.

---

[1]     All further statutory references are to the Penal Code.

[2]     All further dates refer to the year 2020 unless otherwise stated.

[3]     The amended information originally charged misdemeanor trespass as count 3 and misdemeanor unlawfully driving a vehicle onto the property of another (§ 602, subd. (n)) as count 2. However, on June 8, the trial court granted the People's request to dismiss count 2 as "mischarged" and renumber the misdemeanor trespass as count 2.

2.

On July 10, the trial court suspended the sentence on count 1, granted defendant probation for a term of three years, and required him to serve one year in county jail as a term of probation. On count 2, the trial court imposed a concurrent term of 180 days in county jail.

On July 10, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On January 5, Ricardo Guerra worked as a security guard for a private security firm. At approximately 1:00 a.m. or 1:30 a.m., he received a service call, asking that he respond to a convenience store for which the firm provided security. Guerra parked in a parking lot for the convenience store, exited his vehicle, and contacted defendant.[4] Defendant appeared intoxicated and was standing near the northeast entrance to the convenience store, "causing problems[.]" Guerra asked defendant to leave the property. Defendant laughed and said he was not going to leave. Guerra took a step toward defendant and defendant walked away from the convenience store to the north. Guerra walked behind defendant until defendant reached the sidewalk. Guerra then turned back to the convenience store.

Guerra walked to the convenience store to report to the cashiers. He then returned to his vehicle and began writing a report. As he was writing his report, about five to 10 minutes after defendant had left the property, Guerra heard defendant yell in his direction. Guerra exited the vehicle and saw that defendant had come back onto the property and was seated in a grass area. Guerra walked toward defendant. As Guerra approached, defendant stood, walked away from the convenience store, and began to cross the street away from the convenience store. As defendant left, he told Guerra that he was "gonna f**king kill [Guerra]; that he was gonna rape [Guerra's] wife, [and] rape

---

[4]     Guerra knew defendant from a previous interaction approximately one or two months prior at the convenience store.

3.

[Guerra's] kids. [He told Guerra] that he was part of the Mexican Mafia and he was going to make a phone call and [Guerra] was going to be the last one to die. He was gonna make [Guerra] watch." As he spoke to Guerra, defendant repeatedly reached his hand to the small of his back and told Guerra that he had a gun.

Guerra was afraid. He called his dispatcher and asked her to contact the police. Defendant stood on the center divider of the street north of the convenience store. For about two to two- and one-half hours, Guerra waited at the street corner near the convenience store to make sure defendant did not reenter the convenience store's property. In that time, defendant kept repeating his threats to Guerra and describing the ways he would carry out the threats. Guerra did not respond. After approximately two- and one-half hours, the police arrived.

Bakersfield Police Officer Joshua Patty was one of the officers who responded to the call from Guerra's dispatcher. Pursuant to a stipulation, the defense introduced two videos from Patty's body camera. In the first video, Guerra told Patty that defendant told him that "he was from the Mexican [M]afia, that he's going to put a hit out on [Guerra], He[ was] going to rape [Guerra's] daughter, [his] son, basically execute [his] whole family .…" Guerra told Patty that he had been threatened before "[b]ut when certain things come out like Mexican [M]afia it gets [his] attention." When asked if he was in fear for his life from defendant, Guerra responded that he was "in fear of the Mexican [M]afia .… [¶] [Guerra] d[id not] know if [defendant] ha[d] connections or not, but stranger s[**]t ha[d] happened."

In the second video, Guerra told Patty that defendant "sat in the middle divider. Threatened [Guerra]. Threatened [Guerra's] family. [Defendant said he was] from the Mexican [M]afia[;] it's all a phone call away. [¶] … [¶] [Defendant] said he was going to shoot [Guerra] at the end. Basically, he was going to make [Guerra] watch everything."

4.

## DISCUSSION

### 1. Sufficiency of the Evidence

Defendant contends the evidence was insufficient to prove the "occupation" element of continuous occupancy trespass as alleged in count 2. The People agree, as do we.

#### A. Additional Background

After the People concluded their case in chief, defendant moved to dismiss count 2 for insufficient evidence (§ 1118.1), arguing that the People had not established that defendant "occupied any part of the" convenience store. The trial court denied defendant's motion, concluding that there was "sufficient evidence presented that the defendant ha[d] occupied the property, but to what extent occupancy occurred [was] going to be a determination for the jury."

#### B. Legal Standard

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] … We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Brown* (2014) 59 Cal.4th 86, 105–106.)

#### C. Analysis

Defendant was charged with criminal trespass in violation of section 602, subdivision (m), which prohibits "[e]ntering and occupying real property … without the

5.

consent of the owner …." To "occupy" a property for purposes of section 602, subdivision (m), requires " 'a nontransient, continuous type of possession' with 'some degree of dispossession and permanency.' " (*In re Y.R.* (2014) 226 Cal.App.4th 1114, 1119.) Transient overnight use of a property or remaining on a property for several hours is insufficient to meet the occupancy element. (*Id*. at pp. 1119–1120.)

Here, drawing all inferences in favor of the verdict, the evidence supported the conclusion that defendant was on the convenience store's property for only a matter of minutes. The record contains no evidence that defendant attempted to dispossess the owner of the property or established any kind of permanent presence on the property. As the parties agree, the evidence was insufficient for any rational trier of fact to have found beyond a reasonable doubt that defendant occupied the property. Defendant's conviction on count 2 must therefore be reversed.[5]

## 2. Prosecutorial Misconduct and Ineffective Assistance of Counsel

Defendant argues that his conviction on count 1 must be reversed because the prosecutor engaged in misconduct. Specifically, he claims that the prosecutor's repeated mention that defendant threatened to shoot Guerra " 'in the head' " or in the " 'back of the head' " was error because it was not supported by the evidence. Alternatively, defendant argues that if his argument is forfeited, his counsel was ineffective for failing to object to the misstatements. The People respond that defendant forfeited this argument by not objecting at trial and, in any event, any error was harmless. We agree with the People that any error was harmless and defendant suffered no prejudice from any deficient performance by trial counsel.

---

[5] Because we conclude that defendant's conviction on count 2 must be reversed, we do not reach his second argument—that a unanimity instruction was required.

### A. Additional Background

In the prosecutor's opening statement, he told the jury that the evidence would show that defendant told Guerra that he would "shoot him in the head." Guerra testified at trial that defendant told him that he had a gun, threatened to kill him, and repeated the "different ways that he was going to" carry out the threats. Guerra did not testify at trial that defendant threatened to shoot him *in the head*.[6] The prosecutor asked Guerra two questions in which he suggested that defendant threatened to shoot Guerra "in the head[.]" In his closing argument, the prosecutor repeated the phrase "shoot him in the head" or "shoot [him] in the back of the head" five times.

### B. Analysis

"A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) That latitude, however, does not extend to making misrepresentations of law or fact or stating facts not in evidence. (*People v. Davis* (2005) 36 Cal.4th 510, 550; *People v. Valdez* (2004) 32 Cal.4th 73, 134.) A prosecutor's argument also constitutes misconduct under California law if it involves "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." (*People v. Strickland* (1974) 11 Cal.3d 946, 955.)

In deciding whether misconduct has occurred, we evaluate the prosecutor's comments "in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) " 'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' [Citation.]" (*People v. Brown* (2003) 31 Cal.4th 518, 553–554.) "[E]ven

---

[6] At the preliminary hearing, Patty testified that Guerra told him that defendant threatened to rape Guerra's children and then "shoot him in []his head."

otherwise prejudicial prosecutorial argument[s], when made within proper limits in rebuttal to arguments of defense counsel, do not constitute misconduct." (*People v. McDaniel* (1976) 16 Cal.3d 156, 177.)

Even where a prosecutor engages in misconduct, review on appeal is forfeited unless an admonition would not have cured the harm. (*People v. Davis*, *supra*, 36 Cal.4th at p. 550.) Here, defendant's counsel did not object to the prosecutor's repeated reference to defendant threatening to shoot Guerra "in the head." An admonition would have cured the harm. Defendant's prosecutorial misconduct claim is therefore forfeited.

Where a claim of prosecutorial misconduct is forfeited and a defendant challenges the error by way of a claim of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) To establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (See *Strickland*, at pp. 693–694; *In re Cordero* (1988) 46 Cal.3d 161, 180.) A reasonable probability is " 'a probability sufficient to undermine confidence in the outcome.' " (*In re Cordero*, at p. 180.) We need not determine whether counsel's performance was deficient if an ineffective assistance of counsel claim can be disposed of on the lack of sufficient prejudice. (*Strickland*, at p. 697.)

Here, defendant suffered no prejudice as a result of defense counsel's failure to object. The record reflects that defendant threatened to kill Guerra, threatened to shoot him, threatened to rape his wife and children, and threatened to "execute [his] whole family." A conviction for making criminal threats pursuant to section 422 requires a threat "to commit a crime which will result in death or great bodily injury to another person …." (§ 422, subd. (a).) There is no reasonable probability that the outcome would have been different if defendant's counsel had objected to the misstatement that

defendant threatened to shoot Guerra *in the head* because defendant repeatedly threatened to shoot and kill Guerra. Correction of the prosecutor's misstatement would not have negated the proof that defendant threatened to shoot and kill Guerra.

### 3. Assembly Bill 1950

Effective January 1, 2021, Assembly Bill 1950 amended sections 1203a and 1203.1 to limit the maximum term of probation a trial court is authorized to impose for most felony offenses to two years and most misdemeanor offenses to one year. (§§ 1203a, subd. (a), 1203.1, subds. (a) & (m)), as amended by Stats. 2020, ch. 328, §§ 1, 2.) "[T]he … limitation[s] on … probation set forth in Assembly Bill … 1950 [are] ameliorative change[s] to the criminal law that [are] subject to the [*In re*] *Estrada* [(1965) 63 Cal.2d 740] presumption of retroactivity." (*People v. Sims* (2021) 59 Cal.App.5th 943, 963–964; accord, *People v. Quinn* (2021) 59 Cal.App.5th 874, 883–885.) Therefore, the amendments to sections 1203a and 1203.1 apply to all cases not final on Assembly Bill 1950's effective date. (*Estrada*, at p. 742.)

As the parties agree, defendant's case was not final on January 1, 2021, and he was sentenced to a term of felony probation exceeding two years for a crime of conviction that is not a violent felony exempted from the two-year limit on felony probation. (§§ 1203.1, subd. (m), 667.5, subd. (c).)[7] We agree. Defendant is entitled to the benefit of Assembly Bill 1950.

Defendant asks that we reduce his term of probation to two years without remanding to the trial court. The People ask that we remand the matter to the trial court to reduce the term of probation, modify any conditions of probation as necessary, and determine whether defendant has successfully complied with the conditions of probation before the term expires.

---

[7] Making criminal threats (§ 422) is not a violent felony offense excluded from section 1203.1, subdivision (a)'s two-year limit on duration of felony probation by section 1203.1, subdivision (m).

Because our modification of defendant's term of probation to two years would not result in an immediate release from probation, remand is not required.  Defendant was granted probation on July 10, 2020.  If we modify the term of probation to two years, defendant will remain on probation through July 10, 2022.  Until expiration of his term of probation, the trial court may modify the terms and conditions of probation (and the parties may move the court to do so).  (§§ 1203.2, subd. (b)(1), 1203.3, subd. (a).)  As a result, remand for resentencing would serve no practical purpose.  (See *People v. Quinn*, *supra*, 59 Cal.App.5th at pp. 879–885 & fn. 6 [modifying the term of probation without remanding for resentencing].)  Because our modification will not result in an immediate release from probation and because the trial court retains jurisdiction to modify the terms and conditions of probation, we will reduce defendant's term of probation to two years without remanding to the trial court.

## **DISPOSITION**

The conviction on count 2 is reversed and the 180-day concurrent sentence imposed on that count is vacated.  Defendant's term of probation is reduced to two years. The trial court is directed to issue an amended minute order reflecting the modification, and to notify the probation department of the change to defendant's term of probation. As modified, the judgment is affirmed.